and Mr. Greco, whenever you're ready, we'll hear from you. May it please the Court, I'm Scott Greco. I represent the appellants, the King family. My co-counsel is Fred Greco. Your Honors, before I begin, I have, this case deals with original certificates of deposit from back in the 1970s. I have the originals with me. I think at some point in discussing where stamps appear, etc., I think it can be helpful to look at them, but I also understand that we would need leave of court in order to actually refer to actual exhibits. So I can refer to the where things are on the certificates themselves. Were these the original ones that got the stamp by ITC in 1977? Yes. Again, I have them here. Just preliminarily, so I understand where you're going with this. It seems undisputed that the money was paid by First National Bank of Chicago or First off, there is a distinction between First National Bank of Chicago and Morgan Guarantee. I understand. Was the money paid to ITC in 1977? Yes, that is agreed. And how was it paid? Was it paid because ITC was a bearer of the note? That judge, the specific facts, I would submit neither side knows the specific facts other than what the stamps show. But they could only pay it to a bearer and ITC was paid. You agree to that. They were paid. They received payment. That's what their stamp says and we all agree that they received $5 million plus. How do you just receive payment from First National Bank of Chicago for $5 million and you're not the bearer? I would submit, Your Honor, the certificates specifically require surrender of the certificates. These are bearer certificates, so these are like cash. So if one doesn't surrender them and they're not canceled, they still have not, the payment under the terms of the certificates and under the UCC has not been completed. Now money is certainly transferred to Irving Trust, which is now a bank. It's more than that because there's a receipt document that shows the money going to Irving Trust. The payment went into an account, which is identified and it seems to me if we are suing on the certificate of deposit, which you are, that ends the certificate of deposit regardless of where it is after. It's like a canceled check and apparently in this case the trustee of the there is no connection between your client and Irving Trust. There's no connection with your client at First National Bank of Chicago or Morgan or Mellon. It seems to me this is a little bit like finding something in the attic and saying, does this have value? Respectfully, Judge, it is not like a canceled check because it wasn't canceled. There's specific provisions. The money, you agreed the money was paid on it. That ends it. Now whatever else happens. It was paid to a subsequent endorser. Do you want First National to pay again 5 million bucks? No, we want Irving Trust, which is now Bank of New York Mellon to pay the money that it received and it endorsed. They're not the obligor on the certificate of deposit. The endorsement creates a liability under the UCC for an endorser to pay upon. It's a constricted endorsement going into an account, right? It went into a money market account, Judge. Money market safekeeping account, which I would submit is evidence that this was not being paid to the bank. It's being paid to the bank holding it on behalf of another party and that refers to the clients have never had any dealings with Irving Trust. We don't know that, Your Honor. I would agree with that, Judge. We have a certificate of deposit issued by Chicago Bank. We have the certificate of deposit paid to Irving Trust who puts it into an account. At that point, Irving Trust holds 5 million dollars on somebody's behalf. But the certificate of deposit has been honored. At this point, your best argument is you have a claim against that account somehow, but you haven't demonstrated why you have a claim against that account. I would submit that it has not been honored because by its terms, again, this is like cash. One has to surrender it by its own terms. The UCC specifically provides for ways to cancel. I know it wasn't surrendered. Because I'm holding the originals right now and they don't say that they're canceled, Judge. They show they're paid. It does not say canceled, though, Judge. No. What do you think paid means? It's an obligation to pay on maturity 5 million dollars. 5 million dollars was paid and the document so marked. That end it? I would submit then that Irving National Bank, which is now Bank of New York Mellon, should not have then endorsed it with their name creating a liability on behalf of themselves without requiring some sort of... That's an obligation that they took the cash and put it into an account. The point is that how your client got a hold of these certificates of deposit, which had already been paid and so marked, is a good question. I mean, it looks to me it was connected also with an internal Morgan document. It looks like somebody may have just picked up some trash somewhere and said, oh, this might be of some value and collected it. Regardless, it's not necessary for this case because the certificate of deposit issued by a bank paid on the date of maturity with the proceeds deposited into a money market account at Irving Trust. That's what we know. After that, we don't know anything. Now, the question is, you all of a sudden show up with the certificates of deposit and you say, I want to be paid again. We do know that the certificates were not surrendered or canceled, which again is provided for... Because I'm holding them today, Judge, on behalf of my clients. It seems to me if they were... We don't know that Morgan didn't have those then. As a matter of fact, every indication is that they did because we have that little receipt, internal Morgan document that's with it. It looks like Morgan had those documents, which means it was surrendered. Now, the question then is, how did they get from Morgan to your client? At that point, it doesn't matter. The document had already been surrendered. Wasn't there a receipt? Yes, Judge. There is a specific provision in the UCC that allows a bank such as Morgan, if they wanted to cancel or somehow verify that these have been paid, they could write on the front, cancel. They could write on the front, paid. They could tear them up. These are like cash. This is not a check payable to Joe Smith. I understand, but once you've paid it, just because you end up with some canceled checks which don't show the cancellation, if you can demonstrate that the check was paid, the bank's no longer responsible. We do not maintain that Morgan is responsible. The check, the CD's money, based upon what the total amounts of the CD's were paid to Irving Trust, which is now Bank of New York Mellon, they endorsed it. And again, getting to an endorsement requirement, the endorsement requirement is simply that they stamp on the back their name, which they did. Under that, it says all prior endorsements guaranteed, which contemplates and I would submit understands that it is an endorsement. All prior endorsements. It's irrelevant. That was a stamp that was just used because there was no prior. There was a stamp on the back from Morgan Guarantee. I understand, but there are no prior endorsements. This was the original presentation of the document. I would submit that the facts do not support that, Your Honor. Do you see another endorsement? There's a stamp from Morgan Guarantee on it, Judge. Well, that's not the endorsement. Morgan Guarantee is the payor, is the obligor. It's for, it's acting on behalf of First National. I would respectfully disagree, Judge. It states on the front that it is a validating agent, and it states that payments may be made through Morgan Guarantee. It does not obligate Morgan Guarantee to make payment on the front of a CD. It's First National's money. Yes. Well, I take that back. We don't know that it's First National's money. We do know that money was paid to Irving Trust on that date in 1977. Whether or not it came through Morgan on behalf of First National, we do not know that. But again, the UCC is very clear that an endorser is obligated on that instrument, and there is an endorsement from Irving Trust on that instrument, and the instrument has not been canceled. And I would submit that the fact that I stand here holding the originals is evidence that they have not been surrendered. That's not evidence of that at all. To the contrary, the record seems to show they were surrendered to Morgan, and Morgan had them. Respectfully, Judge, the trial court found specifically that the order of the stamps was that the Irving stamp was at the top of the check, and I would submit that if one looks at the stipulation as to where those stamps actually appeared, that's not at all the right side. If you're looking at the front of the certificate, the right side, if you flip it over, the back of that right side is where the stamps appear. And if the trial court was right and the stamp from Irving Trust was at the top, as the trial court claimed, then those stamps on all of them were upside down, which I would submit makes no sense. And I would submit, therefore, that at the very least, looking at the stamps on the back which face opposite directions, one can't determine who stamped those first, whether it's Irving Trust or Morgan Guarantee. And I would submit also that Irving Guarantee, through its current bank, which is now considered Bank of New York Mellon, sent a letter from its legal department in response to an initial demand that specifically said that letter you argue is going to modify a certificate of deposit issued by First National Chicago? I do not argue that it modifies. I argue that it explains some of the facts that occurred back then, which the court has been able to bear, just like cash. Whoever is holding them is the bearer, and they have not been marked paid or canceled. The deposit had on it a listing of around $65,000 that would be paid as interest on maturity a year later. Yes. And then it said no other interest would be paid. And I assume, does that mean that whichever bank is holding it from then on, the bearer can always come back and get the $1,065,000 on the file, but it can get no interest. So the advantage of the bank holding it is the interest that's accruing on it? Does that happen, and they keep that interest accrued on it? Certainly, if the bank is able to accrue it. If it's holding it in its money market safekeeping department and is able to accrue interest by, for instance, lending it out or using it in some other banking fashion, the bank, the certificates themselves do not require further payment of interest after that initial $65,000. Sure, banks would find a way. So I'm trying to wrap my mind around your theory to understand where you're going with this, and that is, are you saying that Urban purchased these, so to speak, endorsed it and purchased it to hold them so that it could make money from the interest on it until the bearer would show up to get it? I could certainly speculate that that's a possibility, Judge. Again, I don't want to get into facts that we don't have. Otherwise, it just looks like they purchased them. It looks like the money was just paid to them as a bearer on behalf of some client. Well, as Smith judges, the father of my clients was in Liberia at the time in the 70s, which was a volatile place. Certainly, having money on deposit at a bank while holding an original bearer's certificate of deposit certainly could have had, I guess it Wasn't there another certificate that the father of someone discovered and then tried to cash in? Yes, and the Bank of New York Mellon attempted to rely on those letters. Again, we're dealing with what letters say, so it's hearsay. But at the time, it did demonstrate, and we would submit it actually supports our position, that if you look through the letters and the facts stated in those letters, the elder, Mr. King, presented this other certificate of deposit to an agent of a New York stock exchange company. That agent sent a letter that said payment had been made approximately, I think it was 16 days after that point through the clearinghouse on that certificate. And then subsequently, when it got back to, I believe it was Morgan, Morgan claimed it had been paid months before, and therefore it was stolen. So I would submit that if you assume the facts in those letters are true, which we don't have any testimony one way or the other on it, it was actually paid after the father of my clients presented it for payment, but he was never paid the money because someone then later claimed that he wasn't entitled to it. So I would submit that the very... The trial court below assumed that it was endorsed. Didn't get into all this question about the endorsement. Just assumed it, I think. And just said, well, it's been paid. And because it's been paid, then you can't sue on the certificate. The trial court specifically relied on 3-601, which talks about discharge, which requires liability of all parties who are discharged when a party with no right of action or recourse on the instrument is discharged. We disagree that that would be applicable because, again, number one, we maintain there's no discharge because there's been no surrender. Again, you look at the terms of the note, which are the certificate of deposit on the front, requires surrender. You make that assertion, but I think the evidence indicates contrary. The court explicitly noted that an internal Morgan document shows receipt, has a receipt that was connected with this certificate of deposit. That receipt, it doesn't show receipt of purchase. And Morgan had the CDs at that point. I would submit, judge that the facts do not support that they had them at that point. In fact, the facts that I'm holding them is evidence on our side... The receipts were with them in the box, weren't they? The receipt is just for the payment. It's not receipt for receiving certificates. You're missing my point. My point is surrender, according to what you're suggesting, is a physical turning over of the document. It seems to me if you have that document now and you also have an internal banking document that was attached to it, it suggests that that bank had the document. I would submit, judge, that it could also suggest that that receipt was paid or transferred somehow to Irving Trust with the payment and placed with Irving Trust then could have certainly submitted with that receipt and the certificates given them to their customer, their client, just as they mentioned in their letter from their legal department, for the client to hold and the client to be able to collect on. And again, I only have about 20 seconds left. Actually, I'm in red, so I'm sorry. I'll step down. We'll have you back. Do you have some rebuttal? You reserve five minutes. Ms. Miller. Good morning. May it please the court, my name is Amy Miller from McGuire Woods on behalf of the Bank of New York Mellon, the appellee. The court has already picked up on our primary point in this case, and that is that the King family is trying to enforce five certificates of deposit that have already been paid and discharged. Let me ask you, what's First National Bank of Chicago's position on this? Is there evidence in the record as to what they, do they still have the deposit in their bank? Do you mean Irving Trust or Bank of New York? No, First National Bank of Chicago. A certificate of deposit represents a deposit in their bank. And they acknowledge they've received a million dollars with respect to each one. And they're holding it and will pay it to bearer. That's what a certificate of deposit is. So there's a pile of cash at First National, there was, represented by the certificate of deposit. Do we know whether First National Bank of Chicago has paid that pile of cash? I do not believe we know the answer to that. They were, of course, the issuer of the certificate of deposit. We know that Morgan paid it. Correct. Their validating agent paid the money. And we don't know if there was an accounting between Morgan and First National. That's correct. That's correct. And since the King family is not a holder in common law, which would obligate the Bank of New York Mellon to pay them any money under these particular instruments. Obviously, the most important undisputed fact is that these certificates have been paid. That was affirmatively alleged in the King's complaint. We also have an undisputed credit ticket, which memorializes the wire transfer of the payment from Morgan Guarantee, the validating agent of the issuing bank, to Irving Trust Company, the collecting bank. We also have a stamp on the back of the certificates of deposit by Irving Trust Company, which says received payment, all of which evidence that payment is, in fact, undisputed in this case. Is it your position that in 1977 ITC was a bearer of these certificates? That Irving Trust was a bearer, yes. Irving Trust, and we know that because Irving Trust physically stamped their certificates and therefore they had to have been in physical possession of them and were therefore the bearer under the UCC. Simply physical possession. Same thing as the lawyer having his pocket over there. He's a bearer, at least in terms of the notes. He would be a bearer. He has it in his hand, albeit for someone else, I take it. Under the UCC, a bearer can only hold bearer paper. It's a little bit different from a holder. A holder, of course, can hold a wider variety of instruments. But I think the appellant's argument that they are bearers of bearer paper and that's all they need to show just isn't enough of an analysis. If you're a bearer, you also have to be a holder. You are subject to all of the defenses in the UCC when you present for payment. You are subject to the defenses of the fact that it's been paid, that it may have been canceled, that it may have been reacquired. All of those defenses apply if you're simply a holder, which is what the King family is in this particular case. Let me ask you this. If ITC was the bearer in 1977 and was paid, could anybody else thereafter become a bearer on that certificate? It's been discharged. They would be the bearer of a discharged instrument that is no longer enforceable. It wouldn't be the bearer of a valid certificate of deposit because it's been paid to ITC. Exactly. Once the bearer is paid, the effect is there's no certificate of deposit for which a bearer can... An enforceable certificate of deposit. That's correct. It's a discharged instrument at that point. So the action here is against the certificate of deposit, but there's argument about fiduciary duty, agency, almost like a constructive trust. I'm surprised I didn't see equitable things jump in here. It seems like that might be a good way to go. An equitable type argument of resulting trust or something of that nature. I thought we used up equitable in the last case. I'm trying to resurrect it, Your Honor. The King family does argue that Irving Trust was somehow an agent for the deceased Mr. King or that there was somehow a fiduciary or a customer relationship. But first of all, they have no evidence that that was the case. There are no facts to support that there was an account with Mr. King had funds on deposit with that particular bank. But even if there were some sort of a customer relationship, that kind of claim would likely sound in contract and not be a claim under the UCC. What the King family is trying to do in their complaint is use their status as bearers of bearer paper under the UCC to claim payment. How does this happen? You have a bank where a customer comes in, has a certificate of deposit for a million dollars. It matures a year later. It's a bearer certificate of deposit. Then you have a guarantee. Then you have another bank that comes in and endorses, at least the trial court assumes, endorses it and gets the money. How does that happen? Why would that happen? We get back to the concept that Irving Trust was the holder. They were the bearer of this bearer paper. We know that because they had physical possession and stamped it. Let me ask the other question. This probably answers that then. When the First National issued the certificate of deposit, they were given to the person who purchased it, who then was the bearer, I take it? Or something happened with them? Presumably. The idea is maybe that's how Irving Trust got them. We don't know how they got them. Precisely. That is correct. We don't know how Irving Trust got the bearer paper. The aunt moved from Chicago to upstate New York and gave it to Irving Trust to present it because it was her great-grandfather who put the money in First National Chicago. She wanted the money. We've got to have some theory. Perhaps. Is there a scenario where First National would hold the certificates of deposit themselves, not just in a sanctified habit, and then themselves transfer to ITC? Much like you do a mortgage loan. You sell it, so to speak, because you can make interest off of it. Is that a scenario? We have no evidence of that. That wouldn't be a good scenario. That seems a favor. Something ought to be done for the family on that if that's what happened here. We have no evidence of that. The King family has proposed a variety of hypotheticals and speculative theories as to how the bearer paper ended up where it did. The bottom line is they don't have any facts to support that. Is it that ITC does not want to disclose the client, or it just says client, or the records don't show it? It seems like banks typically keep pretty good records of things, and yet it's just client. The trial judge, I think, assumed that they were their own clients. Too much time has passed, and the records no longer exist for that period of time is the answer to your question. In discovery, Irving Trust was not able to provide the name of the customer. But as this court pointed out during appellant's argument, there is no obligation for Irving Trust to provide the identity of the customer or to explain what happened to the funds after it accepted them and presumably placed them into deposit. The analysis really stops with the fact that they were the holder, and they received payment, and they stamped their certificate, received payment. Do we know, or could Irving Trust discover the number of the account into which it was deposited? The exact amount is a peculiar number. It's 5 million and some interest. We don't know the number of the account. We do not. It's a market account, I guess it was. Correct. That is what the stamp meant at that particular point in time. There's no evidence as to an account that exists at that time with that balance. We were not able to locate it, correct. That's correct. The appellants have said several times that the appellant must require the word cancelled in order to discharge liability. Cancellation is just one of several methods in which you can discharge liability. Each of the methods that we discuss in our brief, such as payment and reacquisition, are separate and independent bases for discharge of liability. The appellants seem very concerned about the discharge of liability based on payment. It's really not even necessary to look at the stamp at all. It's an undisputed fact that payment was made. Again, the plaintiffs did allege that in their complaint, and of course we have the credit ticket memorializing the wire transfer of the payment between the two banks. The King family also argues that the stamp by Irving Trust constitutes some sort of endorsement in blank that would give rise to a contract of endorsement. Obviously the stamp by Irving Trust, if you are going to look at the stamp, is not just a mere signature. It does say received payment, and it also indicates where the funds were placed. The King family says that there is a possibility that the Morgan Trust company stamped the certificate at the time of issuance and therefore they didn't reacquire it and it wasn't surrendered. We would point out that the Morgan Trust did sign the front of the certificate as the validating agent, and so then it would not have made a lot of sense to also stamp the back at the same time they signed the front at issuance. But again, even if the court doesn't want to look at the stamps at all, we still get back to payment discharges liability. In terms of getting back to the endorsement on the back, if for some reason this court found that the certificates were somehow still enforceable, there is the presumption of payment in this particular case because it has been more than 20 years since the date of maturity. Many states, such as New York, have a bright line rule where if a certain time passes, and in this case it's 20 years after the date of maturity, there is a strong presumption that the certificates have already been paid, and the plaintiffs in this case, the appellants in this case, can't provide and haven't provided any clear and convincing evidence of non-payment. In fact, the presumption of payment is very strong in this case, including the factors that we have already discussed. I thought they had been paid. I thought I heard that First National of Chicago through Morgan paid ITC. That is true, and therefore that piece of the analysis . . . It's really not even necessary to go to that point in the analysis in this case. I agree with you when payment is undisputed. The Kings have already offered other theories, such as the fact that they may be third-party beneficiaries. In this case, during discovery, they developed no evidence that Mr. King or their family were intended as third-party beneficiaries. There is nothing on the certificates or on any of the documents connecting Mr. King or his family to the certificates of deposit or to accounts at either of the banks. There would be no ingest enrichment or quantum merit or any other similar theory that would apply in this case. When you're pursuing a claim under one of those theories, the plaintiff has to show that it bestowed some sort of benefit and was not compensated or adequately compensated in return. In this case, the King family admits they did not pay any consideration for their certificates of deposit. They haven't suffered any kind of loss or expense. They didn't purchase their certificates, and they simply claim that they're in possession. The unjust enrichment theory should not apply. Your Honors, every undisputed material fact in this case shows that payment by Morgan guaranteed discharged the parties of liability. Again, the Kings admit payment, certificates show payment, the credit ticket shows payment. I don't think there's any dispute of fact. I think this is all legal arguments that we're making in court. There really are no issues of fact outstanding at all, and no issues of credibility to resolve either. For that reason, we would ask that this Court affirm summary judgment by the District Court. Thank you, Ms. Miller. Mr. Greco. Please, the Court, just a couple brief responses to counsel. First, in regards to the 20-year rule, I would submit, as we argued in our briefs, that the only appellate case that was cited by the Bank of New York Mellon was from 1884, and that specifically did not deal with the UCC. The UCC has specific statutes of limitations which are not pled or used as a defense in this case. The better law, I would submit, is the Morse v. Miller case, which we cited in our briefs, that talks about the presumption actually being placed on a bank in a situation where, as in this case where a customer is holding a certificate that should have been surrendered if it had been paid, it is not. At that point in time, the bank, which would have better records, Morse v. Miller said the burden is placed on them to show that the certificate itself has been paid. On the issue of who is a bearer and whether the Irving Trust, which is now Bank of New York Mellon, could be or was a bearer when it stamped their certificates, I would submit that the UCC specifically allows for agency law to apply, and so I would submit that certainly Irving Trust at the time could, as an agent of a customer, receive payment, passed on these certificates to its customer, and held money as it stated in its stamp in its money market safekeeping department. And I would submit again, words have meanings. The money market safekeeping department certainly falls into this theory in terms of agency, that it's not receiving the money for itself, that the money is not going into its own account, whereby it would if it was the actual bearer, but it put it in a money market safekeeping department, which would explain why the certificates were not canceled or surrendered at that point in time. In sum, I simply ask that the trial court's ruling be reversed and that summary judgment be entered on behalf of the... Let me ask you, do you agree with the assertion that payment of a certificate deposit brings about discharge of the certificate? Under certain circumstances, yes. What does the UCC say how an instrument is discharged? It says that all... A liability of all parties are discharged when a party with no right of action or recourse on the instrument is discharged. I would submit that Morgan did have a right of action on the instrument, assuming that the money came from Morgan, which is what the documents show. Money came from Morgan, went to Irving. Are you focusing on whether the UCC addresses whether payment effects a discharge? It does if the party paying it... Let's take that back. Payment, again, I get back and I've said it many times, gets back to the face of the certificate. Payment under the certificates and the UCC for a bearer note requires surrender. Let me ask you that. I asked you a question about whether payment on an instrument effects a discharge under the UCC. Yes, but, I guess would be my answer, Judge. What section is that that you would say that? 3601 talks about all parties being discharged when one is discharged. There is a specific section that deals with payment, which I could go flip to and find out. The point I would get back to, Judge, is that payment is a word that needs multiple things to happen. Simply transferring money from one bank to the other bank isn't payment. I would suggest payment is handing over the money. In exchange for handing back their certificate. I didn't say that. My question is focused on payment of the money on the obligation, whether that is discharge. I would submit, Judge, that the endorsement by Irving Trust creates a new liability when they stamp it. Again, it's set out in the UCC. If them simply holding the documents and receiving money would discharge everybody, then there wouldn't be a provision for endorsements because anyone who endorses it has to hold it for them to actually stamp it, so they have to be a bearer at that point in time. The fact that they chose to stamp it, put their name on the back, created liability on their part to pay these instruments. Who created an endorsement? Irving Trust did by stamping it. You think that language which says received payment and put in a money market account is an endorsement? Yes, Judge. It states their name, the name of the bank, which is all that's required for an endorsement. I understand, but it has other language. They're signing it as a receipt. It says received payment, isn't it? It also says all prior endorsements guaranteed, so it's contemplating itself being an endorsement and there being prior endorsements. Thank you, Your Honor. All right, we'll come down and brief counsel and take a short recess. This honorable court will take a brief recess.
judges: Paul V. Niemeyer, James A. Wynn, Jr., Henry F. Floyd